CHRISTIAN WELLISCH
1491 Cypress Drive #684
Pebble Beach, CA, 93953
christian@wellischlaw.com

Christian Wellisch, IN PRO PER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF MONTEREY

| | |
|---|---|
| Christian Wellisch,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Pennsylvania Higher Education Assistance Agency, James L. Preston, and DOES 1 - 100,<br><br>　　　　　Defendants. | No. _____<br>COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES, AND PUNITIVE DAMAGES:<br>1. Declaratory Relief;<br>2. Relief from Fine or Penalty (Mil. & Vet. Code § 403);<br>3. Relief from Pre-Service Liability (Mil. & Vet. Code § 409.3)<br>4. Unfair Business Practices (Bus. & Prof. Code § 17200 et seq.);<br>5. Servicemembers Civil Relief Act (50 U.S.C. § 3901 et seq.)<br>6. Suppression of Fact (Civ. Code § 1710(3))<br><br>Judge:　　Hon. Beth Labson Freeman<br>Department: _____ |

Plaintiff alleges;

## **I. INTRODUCTION**

1. Pursuant to Cal. Mil. & Vet. Code § 409.14, a service member seeking to enforce rights protected under Chapter 7.5 of the California Military and Veterans Code (Mil. & Vet. Code §§ 400 - 409.14) shall not be required to pay a filing fee or court costs. This action seeks enforcement of rights under various sections of Chapter 7.5 arising out of charges incurred during active military service.

1

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES (5:17-CV-00213)

2. The federal Servicemembers Civil Relief Act (SCRA), and sections of the California Military and Veterans' Code (CMVC) modeled on the SCRA, provide numerous rights and protections, in often identical terms, in recognition of the inherent difficulties of complying with obligations during active duty military service (the MILITARY BENEFITS). Originally, these protections were generally limited to judicial proceedings. After amendments in 2003, the SCRA has been expanded to include all local, state, or federal agencies, which are required to implement its protections through analogous measures.[1]

3. The U.S. Supreme Court's guidance indicates these laws are to be liberally construed in favor of protecting service members. Their overarching objective is to prevent, during active military service, detrimental effects arising out of pre-service obligations. Specifically, 50 U.S.C. § 3902 states a twofold purpose in (1) strengthening defense through protections available to service members so as to allow them to fully focus their efforts on military service, and (2) to temporarily suspend "administrative proceedings <u>and transactions</u>" (emphasis added) that may adversely affect them. The legislative and interpretive history of state-law protections reflect similar purposes, with the goal of extending essentially the same protections to members of the National Guard in situations where the federal SCRA may not cover them. "Because the federal and California statutes are so similar in content, language, and purpose, decisions of California and federal courts under the federal act can provide guidance in construing and applying the California law." 44-501 Cal. Forms of Pleading and Practice (Matthew Bender) § 501-60. Despite such well-established public policy generally aimed preserving the status quo by preventing adverse judicial and administrative determinations during military service, statutory rights and protections often are not implemented despite efforts by service members to invoke them.

4. Dealing with pre-service student loan debt is a concern of such magnitude that the Consumer Financial Protection Bureau (CFPB) released a special report in 2015 specifically addressing the issue, entitled "Overseas & Underserved: Student Loan Servicing and the Cost to

---

[1] *See* 50 U.S.C. § 3912; *see also* Sullivan, Mark, *An Agency Guide to the Servicemembers Civil Relief Act*. Available at: https://www.americanbar.org/content/dam/aba/administrative/family_law/committees/scra_agencyguide.authcheckdam.pdf

Our Men and Women in Uniform."[2] The report shows, among other things, that "Military deferments are denied without adequate explanation, applied in a haphazard way, and, in some cases, are approved verbally but never applied to military borrowers' accounts, resulting in late fees, defaults and debt collection".[3] A second report by CFPB called "Servicemembers 2015: A Year in Review" noted that 64% of complaints reported by service members were regarding dealings with lenders or servicers.[4] Yet another report by the CFPB, "Midyear Update on Student Loan Complaints," indicates that Pennsylvania Higher Education Assistance Agency (PHEAA) was ranked second among the list of companies with the most private student loan complaints by volume and on the list of debt collection complaints about private student loans, and fourth regarding complaints about federal student loans, from October 1, 2015 through May 31, 2016.[5]

## II. PARTIES

5. Plaintiff Christian Wellisch (CPT WELLISCH) is an individual who has been through all relevant times a resident of the State of California.

6. Defendant PHEAA is an administrative agency established under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1200 N. 7th Street, Harrisburg, Pennsylvania, 17102. FedLoan Servicing is a fictitious business name under which PHEAA operates its student loan servicing activities nation-wide.

7. Defendant James L. Preston (PRESTON) is the President and Chief Executive Officer (CEO) of defendant PHEAA.

8. Defendants DOE 1 through DOE 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named

---

[2] Petraeus, H. & Frotman, S. (July 7, 2015). Available at: http://www.consumerfinance.gov/data-research/research-reports/overseas-underserved-student-loan-servicing-and-the-cost-to-our-men-and-women-in-uniform/
[3] *Id.*, at p. 4
[4] Consumer Financial Protection Buereau (March, 2015) Available at: http://files.consumerfinance.gov/f/201603_cfpb_snapshot-of-complaints-received-from-servicemembers-veterans-and-their-families.pdf
[5] Consumer Financial Protection Buereau. (August, 2016), at pp. 7, 9. Available at: http://www.consumerfinance.gov/data-research/research-reports/midyear-update-student-loan-complaints/

defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by those defendants.

9. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, each defendant was the agent of every other defendant, and was acting in the scope of such agency and with the permission and consent of each other defendant.

## II. FACTS

10. CPT WELLISCH was appointed an officer in the Army of the United States, and executed an oath of office on February 22, 2013. On the same date, CPT WELLISCH was concurrently appointed and executed an oath of office as an officer in the California Army National Guard (CAARNG), and began serving as a member of the reserve component.

11. Since his appointment as a commissioned officer, CPT WELLISCH served on active duty military orders several times. From March 8, 2014 through December 31, CPT WELLISCH served full-time National Guard duty orders pursuant to 32 U.S.C. § 502(f); from February 1, 2015 through September 30, 2015, he was ordered to Active Duty for Operational Support (ADOS) pursuant to 10 U.S.C. § 12301(d) to serve in South Korea; and from February 5, 2016 to October 23, 2016, CPT WELLISCH was ordered to ADOS pursuant to 10 U.S.C. § 12301(d) for a Contingency Operation in Ukraine (collectively "AD SERVICE").

12. Defendants are, and were at all relevant times, servicers for 11 separate student loans obtained by CPT WELLISCH prior to his military service as Direct Loans (DL) under Title IV of the Higher Education Act of 1965 (the LOANS), disbursed on various dates ranging from August 18, 2010 to September 14, 2012.

13. Between May 24, 1984 and December 24, 2015, PHEAA was qualified pursuant to Corp. Code § 2105 to transact intrastate business as a foreign corporation in California; entity number C1180886. Consequently, PHEAA incurred annual filing obligations under Corp. Code § 2117. Exhibit A is an annual statement of information PHEAA filed in 2013 pursuant to Corp. Code § 2117 as a foreign corporation transacting business in California.

14. Plaintiff is informed and believes, and thereon alleges that PHEAA was obligated to

4

qualify under Corp. Code § 2105 because it transacted intrastate business and maintained employees in California between 1984 and December 2015; that PHEAA also incurred separate filing and payment obligations with the Franchise Tax Board (FTB) pursuant to Rev. & Tax. Code § 23101's definition of "doing business" in California; and that PHEAA's powers, rights, and privileges as a foreign corporation were forfeited by the Secretary of State (SoS) and also by FTB due to failure of PHEAA to comply with its obligations under California law to submit required filings and tax payments. Exhibit B is a certificate of status indicating PHEAA's rights have been forfeited by SoS and FTB, on December 24, 2015 and January 4, 2016, respectively.

15. Plaintiff is informed and believes, and thereon alleges that PHEAA conducts its student loan servicing activities pursuant to a 2009 contractual agreement between PHEAA and Federal Student Aid (FSA), attached as Exhibit C, and a 2014 amendment substantial portions of which address requirements specific to service member borrowers, attached as Exhibit D; that FSA is an office of the United States Department of Education (USDE), a cabinet-level department in the executive branch of the U.S. government; and further that PHEAA's obligations pursuant to its contract with FSA as amended include duties:

    (a) To fully understand and meet all federal and state laws and requirements;

    (b) To meet all legislative and regulatory requirements for the DL program;

    (c) To understand servicing requirements unique to the DL program;

    (d) To be able to implement authority for unlimited forbearances in the DL program by offering to borrowers administrative forbearances at the servicer's discretion, upon receipt of appropriate documentation from borrowers;

    (e) To provide a means for FSA to make a final determination on eligibility of borrowers for various entitlements;

    (f) To respond to written and email questions and requests timely and accurately;

    (g) To respond to and resolve customer complaints, and to create and execute a plan to escalate complaints to FSA and the Federal Student Aid Ombudsman;

    (h) To provide means for service member borrowers to directly access a group of agents

specially trained to respond to inquiries on all aspects of military entitlements, forms, regulations, and military payments, as they relate to federal financial aid;

(i) To provide specialized training for agents to effectively serve the needs of service members with inquiries as described above; and

(j) The power to charge NSF (non-sufficient funds) and other fees.

16. PHEAA states on its website that as the loan servicer, PHEAA is the borrower's primary point of contact. *See* Exhibit E. PHEAA is therefore the primary source of information for borrowers regarding loan programs, benefits, and entitlements; it administers relevant eligibility determinations by collecting and processing forms and agreements; and pursuant to PHEAA's contract with FSA, has authority to offer administrative forbearances at its discretion based on procedures and documents it may require for this purpose from borrowers.

17. The College Cost Reduction and Access Act (CCRAA) established various programs such as Income-Driven Repayment (IDR), which describes a group of several repayment plans including Income-Based Repayment (IBR). IDR plans are intended to be affordable as calculated based on income and family size. Borrowers under partial financial hardship, as defined in 34 C.F.R. § 682.215 subs. (a)(4), are eligible for IBR. Also, military borrowers are eligible for Public Service Loan Forgiveness (PSLF), a benefit designed to encourage public service employment despite generally lower pay relative to private sector employment, by cancelling the remaining balance of debt after 120 monthly payments on eligible repayment plans. Eligible payment plans for PSLF include IBR, thus providing the possibility of combining the benefit of affordable lower payments with forgiveness of the remaining balance after 120 payments.

18. CPT WELLISCH initially made a request to PHEAA for reduced payments in 2013. Responding to CPT WELLISCH's inquiry, PHEAA solicited and processed paperwork, based on which CPT WELLISCH was determined to be eligible for reduced payments on April 10, 2013.

19. Retaining the benefit of reduced payments requires annual recertification of eligibility. PHEAA instructed CPT WELLISCH to recertify online via a link to the studentloans.gov website in emails that state the following:

> You currently repay your loans on an Income-Driven Repayment (IDR) plan. This allows you a lower monthly payment based on your income and family size. As part of this IDR plan, you must recertify annually. It's simple! You just need to complete the online application and provide your current income and family size. If you don't recertify, your monthly installment amount may increase and your interest may capitalize (added to your principal balance).

Exhibit F is a copy of one such email. PHEAA sent several substantially similar emails instructing CPT WELLISCH to recertify online during each year after the initial determination of eligibility for lower payments. In 2015 and 2016, none of CPT WELLISCH's repeated attempts to utilize the link for recertification pursuant to PHEAA's instructions worked, because the link did not function as described, and because the web sites to which it linked were frequently unavailable. In its various communications inviting CPT WELLISCH to recertify his eligibility for lower payments, including the above quoted text, PHEAA failed to distinguish between IDR and IBR.

20. Each year after the initial determination, CPT WELLISCH attempted to recertify his eligibility for reduced payments in a timely manner, prior to expiration of the date for recertification, by following PHEAA's instructions. Each of CPT WELLISCH's timely attempts to recertify failed, and after each attempt CPT WELLISCH requested additional guidance regarding completion of requirements and availability of a stay, and also separately requested a stay in the determination of his eligibility sufficient to allow for completion of the required documentation with PHEAA's assistance so as to avoid consequences of ineligibility. PHEAA did not provide a stay, and due to capitalization of interest resulting from determinations of ineligibility, $7,017.33, $6,825.961, and $5,293.03 was added to the principal of the LOANS in each of the three years, in addition to increased payments totaling $7,915.51.

21. PHEAA's email communications indicate further unnecessary delays in addressing CPT WELLISCH's eligibility for benefits as a service member. On March 18, 2015, when CPT WELLISCH was serving overseas in Korea, PHEAA acknowledged receipt of an email inquiry by CPT WELLISCH, indicating that PHEAA had received the "Military Service Member Benefits question" (Exhibit G) However, it was not until June 12, 2015, that PHEAA confirmed in correspondence that it identified CPT WELLISCH as "eligible for certain military benefits" (Exhibit H). On February 10, 2016 PHEAA acknowledged receipt of another email inquiry sent

by CPT WELLISCH while he was serving overseas in Ukraine, indicating that PHEAA had received the "Military Service Member Benefits question" (Exhibit I). Yet it was not until May 16, 2016, when PHEAA indicated that it had identified CPT WELLISCH "as a military service member" (Exhibit J). Plaintiff is informed and believes that PHEAA failed to abide by the maximum interest rate under applicable federal and state law during all times of his military service.

22. Because PHEAA's recertification notices state only that CPT WELLISCH is due for recertification of his IDR plan without explaining that he is on an IBR plan (as a subcategory of IDR), PHEAA conflates recertification requirements in its notice. Specifically, some IDR plans require information from and signature of a spouse. However, married borrowers who file separately and are on IBR need not provide spousal information. CPT WELLISCH was not able to obtain spousal signature and information, but believed that this was necessary due to PHEAA's failure to disclose and suppressing the difference between general IDR and specific IBR requirements. This in turn caused further needless delays in processing.

23. Throughout their dealings with CPT WELLISCH, defendants and defendants' agents failed to make acceptable efforts to:

   (a) Accommodate hardships of military service in making eligibility determinations;
   (b) Provide adequate and accurate information about state and federal benefits available to service members, as well as regarding discretionary forbearances, and how to invoke these;
   (c) Adequately distinguish between IDR and IBR and requirements for each;
   (d) Provide accurate instructions for completing required forms; and
   (e) Lower interest rates to the statutory maximum during active military service pursuant to the SCRA and CMVC.

24. Sometime between August and September 2016, upon seeing the futility of his pleas for guidance and for a stay to avoid the consequences of an incorrect determination of ineligibility for lower payments, CPT WELLISCH attempted to stop PHEAA from automatically debiting his

bank account by halting payments online, but was unable to do so due to processing delays in PHEAA's systems. CPT WELLISCH's bank account was overdrawn due to defendants' debits for the increased monthly payments on the LOANS, resulting in non-sufficient fund (NSF) charges of $49 (Exhibit K).

**FIRST CAUSE OF ACTION**
**Declaratory Relief**
**Against Defendant PHEAA**

25. Plaintiff repeats and re-alleges paragraphs 1 - 24 above as though fully set forth herein.

26. 50 U.S.C. § 4042 subs. (a) provides a right to declaratory relief to any person aggrieved by a violation of the SCRA. Plaintiff alleges violations of several sections of the SCRA, and wishes to invoke his right to declaratory relief.

27. As an independent ground for a right to declaratory relief, an actual controversy has arisen and now exists between Plaintiff and Defendant PHEAA concerning their respective rights and duties in that Plaintiff has asserted and PHEAA has denied:

   (a) Plaintiff's right under applicable federal and state laws, including SCRA and CMVC, to affect a stay in the determination of Plaintiff's eligibility for IBR;

   (b) That PHEAA is an agency subject to the SCRA's jurisdiction under 50 U.S.C. § 3912 subs. (a), and that under subs. (b) and (c) determinations made by PHEAA affecting Plaintiff's rights are proceedings to which relevant sections of SCRA are applicable;

   (c) That PHEAA cannot participate in any litigation activities in California due to forfeiture of its rights by SoS and FTB, as a previously registered foreign corporation that incurred such penalties for its failure to comply with filing and tax obligations.

   (d) That Defendant PRESTON, as PHEAA's chief executive, can be subject to an injunction as necessary to avoid violation of federal law.

28. A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their respective rights and duties in relation to servicing of Plaintiff's loans by PHEAA. Declaratory relief would also serve judicial efficiency, reduce the

costs of litigation, and prevent multiple liability. Absent a court order declaring the parties' respective rights, Plaintiff will suffer irreparable harm that has no adequate remedy at law in that Plaintiff's due process and statutory rights will be denied, and because as an agency of the Commonwealth of Pennsylvania, there is a likelihood that PHEAA will invoke sovereign immunity rendering money damages against it unlikely.

**SECOND CAUSE OF ACTION**
**Relief from Enforcement of Fine or Penalty**
**(Cal. Mil. & Vet. Code § 403)**
**Against PHEAA**

29. Plaintiff repeats and re-alleges paragraphs 1 - 28 above as though fully set forth herein.

30. Pursuant to Cal. Mil. & Vet. Code § 403 (b), "in any case where a person fails to perform any obligation and if a fine or penalty for the nonperformance is incurred a court may, on those terms as may be just, provide relief against the enforcement of that fine or penalty if it appears that the person who would suffer by that fine or penalty was in the military service when the penalty was incurred and that by reason of military service the ability of the person to pay or perform was thereby materially impaired."

31. Plaintiff failed to perform obligations in that he was unable to provide required documentation to remain eligible for lower monthly payments, as based on the instructions provided by PHEAA, and by reason of material impairments of overseas military service. As a result of this inability to comply and the consequent higher payments debited from CPT WELLISCH's account, he also incurred non-sufficient funds (NSF) fees.

32. Plaintiff requests relief including restitution, monetary damages, attorney's fees, costs, injunctive relief, and any other applicable relief as may be just.

**THIRD CAUSE OF ACTION**
**Petition for Relief from Pre-Service Liability**
**(Cal. Mil. & Vet. Code § 409.3)**
**Against PHEAA**

33. Plaintiff repeats and re-alleges paragraphs 1 - 32 above as though fully set forth herein.

34. Pursuant to Cal. Mil. & Vet. Code § 409.3, the court may grant a deferment of payments during plaintiff's period of military service and no fine or penalty shall accrue during the

deferment, subject to any other terms as may be just.

35. Plaintiff incurred liability for the LOANS before the effective date of his most current period of military service.

36. Plaintiff's ability to comply with terms and obligations related to the LOANS was materially affected by reason of plaintiff's most current period of military service.

37. Accordingly, in the interest of justice plaintiff requests deferment during plaintiff's periods of military service, to be applied retroactively to plaintiff's periods of military service during which plaintiff was determined to be no longer under partial financial hardship. Plaintiff additionally requests restitution of all payments in excess of otherwise applicable amounts under the IBR plan, as well as any interest charged in excess of statutory limits under the SCRA and CMVC. Plaintiff requests money damages, costs, injunctive relief, and all other applicable relief.

**FOURTH CAUSE OF ACTION**
**Unfair Business Practices**
**(Cal. Bus. & Prof. Code § 17200)**
**Against PHEAA**

36. Plaintiff repeats and re-alleges paragraphs 1 - 35 above as though fully set forth herein.

37. Plaintiff is informed and believes, and thereon alleges that PHEAA perpetrated or knowingly facilitated a fraudulent scheme which denied Plaintiff benefits to which he was entitled under federal and state laws, in that PHEAA could have applied discretionary forbearances to avoid the consequences of a determination of ineligibility for IBR, but refused to do so because the billing rate for servicing borrowers in the 'Service Member' category is higher than the forbearance category ($2.85 versus $1.05 as of the 2009 contract), and also in that PHEAA provided no training to its employees on state-law benefits available to service members to reduce PHEAA's costs contrary to PHEAA's contract with FSA, and further, in refusing to acknowledge and implement its responsibilities as an agency within the SCRA's jurisdiction.

38. Defendant's fraud is perpetrated to the detriment of student loan borrowers in military service, including Plaintiff. Defendant's fraudulent scheme is calculated to result in increased profits arising from the servicing of loans held by military service members, with no tangible benefit accruing to the military service members.

39. By doing the things alleged herein, defendants have engaged in unlawful business practice in violation of Cal. Bus. & Prof. Code § 17200.

40. By their actions, defendants have caused plaintiff to be damaged according to proof.

41. By engaging in the scheme to defraud military service members, including plaintiff, defendants have acted with fraud, malice, and oppression. Accordingly, plaintiff is entitled to an award of punitive damages against defendants.

41. Plaintiff is entitled to any and all other applicable relief for defendants' unlawful business practices in this matter.

**FIFTH CAUSE OF ACTION**
**Servicemembers Civil Relief Act (SCRA)**
**(50 U.S.C. §§ 3901 - § 4043)**
**Against All Defendants**

42. Plaintiff repeats and re-alleges paragraphs 1 - 41 above as though fully set forth herein.

43. Any person aggrieved by a violation of the SCRA (50 U.S.C. §§ 3901 – 4043) may bring a civil action for damages, equitable, and other relief. "When under this chapter any application is required to be made to a court in which no proceeding has already been commenced with respect to the matter, such application may be made to any court which would otherwise have jurisdiction over the matter." 50 U.S.C. § 3912 (c).

44. Courts are required to stay proceedings when a service member has notice, pursuant to procedures outlined in § 3932, and no penalty shall accrue during the period of stay. The definition of "court" under SCRA § 3911 subs. (5) includes administrative agencies and political subdivisions of a state, such as PHEAA. Agencies are to implement those of SCRA's requirements described in terms generally used for judicial proceedings via analogous agency proceedings. PHEAA has the authority to offer discretionary forbearances, which can effect relief analogous to a "stay."

45. Plaintiff repeatedly sought the benefits of a stay and requested PHEAA to delay determination of Plaintiff's eligibility for reduced payments, since he was unable to complete the forms as instructed by PHEAA, and also due to material effects of his military service. PHEAA

did not offer a forbearance or any relief analogous to a stay.

46. Defendants' aforementioned conduct violated 50 U.S.C. § 3932 in that defendants failed to make available to plaintiff any means by which plaintiff could exercise his right to a stay.

47. 50 U.S.C. § 3933 subs. (b) provides that if a penalty is incurred arising from a service member's nonperformance, a court may reduce or waive the fine or penalty if it was incurred while the service member was in military service and the ability of the service member to perform the obligation was materially affected by such military service. The above described increased monthly payment amounts and capitalized interest constitute penalties incurred by Plaintiff during military service, and plaintiff's ability to perform was materially affected by such military service. Additionally, Plainiff incurred fees for non-sufficient funds due to withdrawal of the higher payment amount.

48. Plaintiff requests waiver of payments and capitalized interest above the otherwise applicable IBR plan payment amounts, and on terms as the Court may deem just. Plaintiff requests damages, fees and costs, attorney's fees, equitable relief, and all other available relief.

**SIXTH CAUSE OF ACTION**
**Suppression of Fact**
**(Civ. Code § 1710(3))**
**Against PHEAA**

49. Plaintiff repeats and re-alleges paragraphs 1 - 48 above as though fully set forth herein.

50. On or about September, 2016, after telephonic communication was available from Plaintiff's overseas active duty military service location, Plaintiff was able to reach PHEAA's telephone representative. During that conversation, PHEAA's representative instructed Plaintiff that his spouse's signature, as well as information about Plaintiff's spouse's income and taxes was required for the processing of paperwork necessary to maintain Plaintiff's reduced payments. However, this is not true for borrowers on IBR plans who file taxes separately, as Plaintiff does. PHEAA, through its representative, suppressed this information. Additionally, in all of its email notices for recertification, PHEAA suppressed differences between IDR and IBR, and that Plaintiff's lower payment plan was IBR.

51. PHEAA also suppressed the fact that its rights and powers had been forfeited by the SoS and FTB.

52. The failures to disclose information and suppressions of information herein alleged to have been made by the defendant PHEAA and PHEAA's agents were made with the intent to induce the plaintiff to act in the manner herein alleged in reliance thereon.

53. Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff took the actions herein alleged, was ignorant of the existence of the facts that the defendant suppressed and failed to disclose. If the plaintiff had been aware of the existence of the facts not disclosed by the defendant, the Plaintiff would not have, as he did, endeavored to obtain documentation of his spouse's taxes and income, and her signature, resulting in unnecessary delays. Plaintiff justifiably relied on the limited information and communications available to plaintiff during plaintiff's overseas military service.

54. As a direct consequence of defendants' actions, plaintiff incurred damages according to proof. Defendants' conduct was intentional, willful, and taken in disregard of plaintiff's rights. Plaintiff is therefore entitled to punitive damages. Plaintiff requests fees and costs, attorney's fees, and all other available relief.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff requests that this court grant the following relief:

1. Enter a judgment against defendants, and each of them, in favor of plaintiff;
2. General damages according to proof;
3. Punitive damages;
4. Attorney's fees and costs;
5. An accounting of all payments, interest, fees, and penalties charged during any periods of plaintiff's active duty military service;
6. Disgorgement and restitution of any payments, fees, or rates charged in excess of applicable legal limits or as a result of changes to plaintiff's IBR plan;
7. Prospective injunctive relief ordering defendants to pay up to 48 monthly payments on

plaintiff's IBR payment plan during any periods when plaintiff is serving in full-time active military service, as a fair, just, and equitable remedy for defendants' conduct, which resulted in a sometimes 80-fold increase in plaintiff's regular monthly payment amount;

8. Injunctive relief ordering defendant James L. Preston, as CEO of defendant PHEAA, to apply any payments, fees, or penalties charged in excess of plaintiff's monthly IBR plan or otherwise applicable legal limits toward future monthly payments against the LOANS;

9. For such other relief as the court may deem just and proper.

**TRIAL BY JURY IS DEMANDED**

Date: July 14, 2017

　　　　　　　　　　　　　　　　　　　　　　　Christian Wellisch
　　　　　　　　　　　　　　　　　　　　　　　IN PRO PER